**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CHERI SERLIN<br><br>                    Plaintiff(s),<br><br>v.<br><br>THE ALEXANDER DAWSON<br>SCHOOL, et al.,<br><br>                    Defendant(s). | 2:12-CV-1431 JCM (GWF) |

**ORDER**

Presently before the court is defendants' Alexander Dawson School, Alexander Dawson, Inc., Alexander Dawson School at Rainbow Mountain, LLC, and Alexander Dawson Foundation (collectively "defendants") motion for summary judgment. (Doc. # 41). Plaintiff Cheri Serlin has filed a response (doc. # 47) and defendants have replied (doc. # 53).

**I.     Background**

Plaintiff was formerly employed by the defendants as an elementary school teacher. At the time of filing, plaintiff had taught for a total of 18 years. In particular, she had taught fifth grade for four years at defendants' school when she was told her contract would not be renewed in March 2011. At the time of filing the complaint, plaintiff was 58 years old.

Plaintiff was diagnosed with breast cancer in 2009 while employed at Dawson. Following her diagnosis, she underwent 18 weeks of chemotherapy while continuing to work for defendants. Since 2009, plaintiff had been taking leave under the Family Medical Leave Act ("FMLA"). Her

**James C. Mahan**
**U.S. District Judge**

leave was renewed in February 2011, approximately one month before she was told her contract would not be renewed.

According to plaintiff, she was harassed and bullied for several months in 2010 by another faculty member, Julie Tognoni ("Tognoni"). Tognoni allegedly told plaintiff she could not "stand her" and that she was "incompetent." It is further alleged that Tognoni knew plaintiff is from Skokie, Illinois (which apparently maintains a large Jewish population), and that Tognoni stated plaintiff was from the "Bagel Belt," implying that all Jewish people love bagels. Plaintiff maintains that this reference was derogatory, hurtful, discriminatory, and made her feel stressed.

Plaintiff filed a written complaint regarding Tognoni's comments and met with her superior, Russell Smith. She alleges that Smith responded angrily and told her that, because he could not find "Bagel Belt" on the internet, he did not believe it to be derogatory. She further alleges that Smith analogized being told one is from the "Bagel Belt" to being told one is from the "Bible Belt," and that the comment was meant as a compliment. Finally, plaintiff alleges that during the meeting, Smith "raised his voice sternly and intimidated [plaintiff] by saying 'do you really want to make something out of this?'"

Plaintiff's breast cancer required her to undergo a bilateral double mastectomy and caused interstitial cystitis. She alleges she had to use the bathroom approximately 10-20 times per day as a result of her operations. Plaintiff further alleges that she was chastised by co-workers, in particular Tognoni and Cheri Garner ("Garner"), for her frequent bathroom use, for the amount of leave she took, and for her inability to perform various tasks such as decorating the hallway, preparing the assembly hall, and performing recess and car pool duties.

Defendants hired Angie Vetter ("Vetter") to replace plaintiff when her contract expired in March 2011. Vetter was 29 years old at the time and had been teaching for approximately 10 years. According to the defendants, plaintiff's contract was not renewed and Vetter was instead hired for two primary reasons. First, defendants were, at that time, contemplating a new requirement that all fifth grade teachers be capable of teaching math, and plaintiff either could not or was unwilling to teach it. Second, defendants cited "team problems" as an additional factor in their decision. These

James C. Mahan
U.S. District Judge

- 2 -

1  "team problems" referenced plaintiff's inability to get along with the other teachers, in particular
2  Tognoni and Garner.

3  Based on these facts, plaintiff has filed the instant complaint alleging causes of action for:
4  (1) FMLA interference, in violation of 28 U.S.C. § 2615(a)(1); (2) FMLA retaliation, in violation
5  of 29 U.S.C. § 2615(a)(2) & (b); (3) violation of the Americans with Disabilities Act ("ADA") and
6  NRS § 613.330; (4) religious discrimination and hostile work environment based on religion, in
7  violation of Title VII and NRS § 613.330; (5) retaliation, in violation of Title VII, 42 U.S.C. §
8  2000e-3 and NRS § 613.340; (6) age discrimination, in violation of 29 U.S.C. § 621, et seq., and
9  NRS § 613.330 et seq.; (7) blacklisting, in violation of NRS § 613.200 and 613.210; and (8)
10 wrongful termination in violation of Nevada public policy/bad faith termination.[1]

## II. Legal Standard

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the

---

[1] Plaintiff's disability, religion, and age discrimination claims brought under state law will be analyzed under the framework provided by the ADA, Title VII, and the ADEA as they operate under the same guiding principles.

**James C. Mahan**
**U.S. District Judge**

- 3 -

1  moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential
2  element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to
3  make a showing sufficient to establish an element essential to that party's case on which that party
4  will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party
5  fails to meet its initial burden, summary judgment must be denied and the court need not consider
6  the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

7  If the moving party satisfies its initial burden, the burden then shifts to the opposing party
8  to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*
9  *Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing
10 party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
11 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions
12 of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th
13 Cir. 1987).

14 In other words, the nonmoving party cannot avoid summary judgment by relying solely on
15 conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045
16 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the
17 pleadings and set forth specific facts by producing competent evidence that shows a genuine issue
18 for trial. *See Celotex Corp.*, 477 U.S. at 324.

19 At summary judgment, a court's function is not to weigh the evidence and determine the
20 truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*,
21 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable
22 inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is
23 merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at
24 249–50.

25 . . .
26 . . .
27 . . .
28

**James C. Mahan**
**U.S. District Judge**

- 4 -

### III. Discussion

    1.    FMLA claims

        *A.    Retaliation*

Under § 2615(a)(2), it is "unlawful for any employer to discharge or in any other manner discriminate against any individual *for opposing* any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2) (emphasis added). "An allegation of a violation of this section is known as a 'discrimination' or 'retaliation' claim." *Sanders v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011)(*citing Bachelder,* 259 F.3d at 1124).

However, the anti-retaliation and anti-discrimination provisions of 29 U.S.C. § 2615(a)(2) and (b), "[b]y their plain meaning. . .do not cover visiting negative consequences on an employee simply because [s]he has used. . .leave." *Bachelder,* 259 F.3d at 1124. In *Bachelder,* the Ninth Circuit described FMLA claims for retaliation or discrimination as those where an employer is accused of discriminating against an employee for opposing practices made unlawful by the FMLA, or for instituting or participating in FMLA proceedings or inquiries. *Id.*

Plaintiff claims her contract was not renewed because of the amount of FMLA leave she utilized. Her only "opposition" to that action was via the instant lawsuit. That opposition could not have resulted in retaliation or discrimination because, of course, the adverse employment decision had already been made. *See, e.g., Gutierrez v. Grant Cnty.*, 2011 WL 1654548 (E.D. Wash., May 2, 2011). This is in contrast to a situation where, for example, an employee was denied leave they were entitled to, complained, and was subsequently fired for his or her complaint.

The facts of this case do not allow for an FMLA retaliation claim. Summary judgment is granted.

        *A.    Interference*

It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). "The regulations explain that this prohibition encompasses an employer's consideration of an employee's use of FMLA-covered leave in making adverse employment decisions." *Bachelder v. America West*

*Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001).

In order to prevail on an interference claim, plaintiff "need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her. She can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both. No scheme shifting the burden of production back and forth is required." *Id.* at 1125 (internal citations omitted).

It is undisputed here that plaintiff took protected leave due to her breast cancer. In addition, the decision not to renew an employee's contract may be considered an "adverse employment action." However, the parties dispute whether the decision not to renew plaintiff's contract was causally related to her use of FMLA leave.

As defendants point out, plaintiff's requests for FMLA leave had been repeatedly granted for several years prior to the decision not to renew her contract. There has been no evidence presented that those in charge were anything other than accommodating in granting plaintiff's leave requests over those years. In fact, plaintiff's leave was again renewed approximately one month before the employment decision was made.

These undisputed facts demonstrate that plaintiff's use of FMLA leave was not at all casually related to the decision not to renew her contract. Summary judgment is granted.

2. <u>ADA violations</u>

The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability." *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999); 42 U.S.C § 12112(a). To state a prima facie violation under the ADA, plaintiff must show that: (1) she is a disabled person within the meaning of the ADA; (2) she is a qualified individual, meaning she can perform the essential functions of her job; and (3) she was terminated because of her disability. *Nunes*, 164 F.3d at 1246.

  A.  *"Disabled person"*

A "disabled person" is defined as an individual with "a physical or mental impairment that substantially limits one or more major life activit[y]. . ." 42 U.S.C. § 12102(1)(A). "[A] major life

activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system [and]. . .digestive, bowel, bladder. . .functions." 42 U.S.C. § 12102(2)(B).

Plaintiff has alleged, and defendants have conceded, that she was required to use the restroom between 10 and 20 times per day as a result of her surgeries. Plaintiff clearly experiences a physical condition which substantially affects major bodily functions, and is therefore "disabled" as defined by the ADA.

        *B.*     *Qualified individual*

"The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Although both parties fail to detail what the essential job functions are, the court notes that plaintiff had been teaching at defendants' school in the same capacity for several years without any evidence that her teaching performance was sub-standard. Accordingly, the court concludes she was a "qualified individual" as contemplated by the statute.

        *C.*     *Terminated because of disability*

Defendants cited plaintiff's inability to get along with her co-workers as one of two reasons behind their decision not to renew her contract. Plaintiff herself has admitted that she was unable to get along with Tognoni and Garner. Because both parties agree she was unable to get along with the other members of her fifth grade team, the court concludes there is not a triable issue of fact regarding the cause of the adverse employment decision. Summary judgment is granted.

        3.     Religious discrimination

Plaintiff's next claims are for religious discrimination, hostile work environment based on religion, and retaliation brought pursuant to 42 U.S.C. §§ 2000e *et seq.* and NRS § 613.340. These claims are based entirely on the "Bagel Belt" comments made by Tognoni, and Smith's alleged reaction to plaintiff's complaint regarding those comments.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 7 -

*A.     Discrimination*

Title VII prohibits employment discrimination based on any of its enumerated grounds: race, color, religion, sex, or national origin." *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000)(citations and quotations omitted).

"[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a *motivating factor* for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m) (emphasis added).

Plaintiff has provided no evidence that the named defendants discriminated against her because of her Jewish faith. In fact, defendants were not aware of those comments until some time *after* they had ceased. Once Smith was made aware, he reprimanded Tognoni.

Plaintiff's allegation that Smith sternly asked her if she "really wanted to make something out of this" is frankly insufficient to demonstrate Smith himself harassed her as a matter of law. Candidly, the court is unconvinced that insinuating one likes bagels may constitute the type of harassment contemplated by Title VII and actionable under law.

There is simply no evidence that the decision not to renew her contract was at all related to her faith, much less that her faith was a "motivating factor" behind that decision.

*B.     Hostile work environment*

In order for a claim based upon a hostile work environment, plaintiff must demonstrate that the "workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)(citations and quotations omitted).

"Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview." *Harris*, 510 U.S. at 21. The "mere utterance of an epithet which engenders offensive feelings in a [sic] employee does not sufficiently affect the conditions of employment to implicate Title VII." *Id*. (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986)).

1  Such is the case here. While Tognoni's comments implying that plaintiff enjoys bagels by
2  virtue of her Jewish faith may have engendered offensive feelings, a reasonable person would not
3  find that those comments created a hostile or abusive work environment.

4      C.    *Retaliation*

5  Plaintiff alleges the decision not to renew her contract was in retaliation for her complaints
6  regarding Tognoni's comments.

7  To establish a prima facie case, plaintiff must demonstrate: (1) a protected activity; (2) an
8  adverse employment action; and (3) a causal link between the protected activity and the adverse
9  employment action. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034-35 (9th Cir.
10 2006).

11 The Supreme Court has recently clarified the standard or proof with respect to causation,
12 holding that "Title VII retaliation claims must be proved according to traditional principles of but-for
13 causation, not the lessened causation test stated in § 2000e–2(m). This requires proof that the
14 unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions
15 of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

16 In introducing this heightened causation standard, the court recognized that "claims of
17 retaliation are being made with ever-increasing frequency." *Id.* at 2531. It also noted that "lessening
18 the causation standard could also contribute to the filing of frivolous claims, which would siphon
19 resources from efforts by employer, administrative agencies, and courts to combat workplace
20 harassment." *Id.*

21 Under this heightened standard, plaintiff has failed to demonstrate a sufficient causal link
22 between her complaint to Smith regarding Tognoni's comments and the decision not to renew her
23 contract. Put differently, plaintiff has failed to demonstrate that the decision not to renew her
24 contract would not have been made but-for her complaint regarding the "Bagel Belt" comments.[2]

---

[2] The inclusion of plaintiff's FMLA retaliation, ADA, and ADEA claims, all in which she contends caused or contributed to the adverse employment decision, tend to undermine any argument that her complaint regarding the "Bagel Belt" comments was the "but-for" cause of that decision.

**James C. Mahan**
**U.S. District Judge**

- 9 -

Summary judgment is granted.

### 4. Age discrimination

The Age Discrimination in Employment Act ("ADEA") makes it unlawful to "fail or refuse to hire. . .any individual. . .because of such individual's age." 29 U.S.C. § 623(a)(1).

Claims based on circumstantial evidence are evaluated using the three-stage burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Under this framework, the employee must first establish a prima facie case of age discrimination." *Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008)(*citing Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)). "If the employee has a justified presumption of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action." *Diaz*, 521 F.3d at 1207 (*citing Coleman* at 1281). "If the employer satisfies its burden, the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination." *Id.*

#### A. Prima facie case

Plaintiff can establish a prima facie case by demonstrating she was (1) at least forty years old, (2) performing her job satisfactorily, (3) discharged, and (4) replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination. *Diaz*, 521 F.3d at 1207-8 (citations and quotations omitted).

First, it is undisputed that plaintiff was 58 years old at the time her contract was not renewed.

Second, for purposes of this claim defendants do not argue that plaintiff did not perform her job satisfactorily.

Instead, with respect to the third prong, defendants contend that plaintiff must have been "terminated" in order to bring an age discrimination claim as a matter of law. Defendants have not cited any case law in support of their position, and this argument is contradicted by the language of the ADEA. As noted previously, the ADEA makes it unlawful to discharge *or* "fail or refuse to hire" an individual on the basis of their age. *See* 29 U.S.C. § 623(a)(1). The decision not to renew

plaintiff's contract or, put a different way, refuse to (re)hire her, was an adverse decision within the meaning of the statute.

Fourth and finally, Angie Vetter was 29 at the time she was hired to fill plaintiff's position. Vetter has her master's degree in education from the University of Phoenix, and was (at least at that time) pursuing a Ph.D. in education. Plaintiff had approximately 35 years teaching experience and Vetter had approximately 10. Compared with plaintiff's master's in education and her status as a "one-time Johns Hopkins Fellow," the court finds their qualifications to be largely equal.

As plaintiff has established a prima facie case, the burden shifts to defendants to articulate a legitimate, non-discriminatory reason for their decision not to rehire plaintiff.

### B.   *Non-discriminatory reason*

Defendants repeat the same two reasons for their decision. First, plaintiff was unable to get along with the other fifth grade team members. Second, defendants maintain that at the time the decision was made, they had anticipated instituting a requirement for the following school year that all fifth grade teachers be able to teach math, and that plaintiff had no experience in that subject.

Either of these explanations is a legitimate and facially non-discriminatory reason not to renew her contract, therefore the burden shifts back to plaintiff to demonstrate that these reasons are mere pretext.

### C.   *Pretext*

Plaintiff fails to carry her burden in demonstrating pretext for the same reason she was unable to demonstrate a casual link in her previous claims: she admits was unable to get along with the other members of her team. Choosing not to rehire an individual with a demonstrated inability to work with one's co-workers is a perfectly valid reason and does not implicate or otherwise suggest the existence off improper motives. Summary judgment is granted.

5.   <u>Blacklisting and wrongful termination</u>

Plaintiff's final two claims allege that the defendants "blacklisted" her by actively preventing her from obtaining future employment, and that defendants chose not to renew her contract maliciously in violation of Nevada public policy.

**James C. Mahan**
**U.S. District Judge**

Recognizing her failure to produce any evidence supporting these two claims, plaintiff concedes summary judgment on them. (*See* opposition, doc. # 47, p. 34). Summary judgment is granted.

### IV. Conclusion

The court concludes that plaintiff has failed to present a triable issue of material fact as to any of her claims. Summary judgment is granted in defendants' favor as to each claim.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for summary judgment (doc. # 41) be, and the same hereby is, GRANTED. Defendants shall submit a proposed judgment within five (5) days of the issuance of this order.

DATED April 17, 2014.

_____
**UNITED STATES DISTRICT JUDGE**

**James C. Mahan**
**U.S. District Judge**

- 12 -